FILED
SUPERIOR COURT
OF GUAM

'2014 OCT 27 FI 3: 37

CLERK OF COURT

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| DAVID J. LUJAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>J.L.H. TRUST, a Cook Islands Trust, KEITH A. WAIBEL, an individual and as Trustee of JLH Trust, ROGER SLATER, an individual, GRANT THORNTON, a Guam entity, and DOES 1 through 20,<br><br>                    Defendants. | CIVIL CASE NO. CV 0776-09<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 8th day of September, 2014, for hearing on the Defendants' Motions to Dismiss. Attorney James M. Maher represented the Plaintiff, and Attorney G. Patrick Civille represented the Defendants. For the reasons set forth below, the Court GRANTS the Defendants' motions in part and DENIES the Defendants' motions in part.

## FACTUAL AND PROCEDURAL HISTORY

This case arises out of attorney David Lujan's ('the Plaintiff') former representation of trustee Keith A. Waibel and the J.L.H. Trust, in which the Plaintiff represented the interests of Junior Larry Hillbroom ("Junior"). Junior is a pretermitted heir of Larry Hillblom, the co-

*ORIGINAL*

founder of DHL Worldwide Express, who left an estate worth hundreds of millions of dollars. Larry Hillblom died in a plane crash in 1995 while a resident of the Commonwealth of the Northern Mariana Islands. The Plaintiff was retained by Junior's guardians to prosecute Junior's claim to the Hillblom estate, with a 1998 retainer agreement that specified that the Plaintiff and his co-counsels would receive thirty-eight percent of Junior's recovery.

The J.L.H. Trust was settled in April 1999, under the law of the Cook Islands, for the management of Junior's recovery, and Keith A. Waibel, a California resident was appointed trustee. In 1999, the Plaintiff and co-counsel entered into an amended retainer agreement that applied to work done after the settlement and final distribution of the Hillblom estate, at an increased contingency fee of fifty-six percent. This retainer was approved by Waibel as trustee of the J.L.H. Trust. Subsequently, Waibel hired the Guam-based accounting firm Grant Thornton, and particularly accountant Roger Slater, to produce a trust accounting.

On February 3, 2009, Junior, who was now of age, sued the Plaintiff, Plaintiff's co-counsel, and Keith A. Waibel, by and through Junior's counsel the law firm Girardi ᛁ Keese and particularly the attorney Graham LippSmith, in the U.S. District Court for the Central District of California. This action was eventually dismissed and refiled in the U.S. District Court for the Northern Mariana Islands. Junior challenged the 1999 retainer and the amount of fees and costs paid to the Plaintiff and his co-counsel. LippSmith spoke with a reporter in California about the lawsuit, criticizing the Plaintiff, and the resulting interview was broadcast in Guam and the CNMI.

On May 11, 2009, the Plaintiff brought suit in the Superior Court of Guam against six defendants: the J.L.H. Trust, Keith A. Waibel, Grant Thorton, Roger Slater, Girardi ᛁ Keese and Graham LippSmith. Lujan made six claims for relief: 1) defamation against Girardi ᛁ Keese and

LippSmith; 2) intentional interference with contract against Waibel, Grant Thorton, and Slater; 3) aiding and abetting against Waibel, Grant Thorton, and Slater; 4) contribution against Waibel; 5) equitable indemnification against Waibel; and 6) breach of contract against Waibel and the J.L.H. Trust. Of these claims, the defamation claim against Girardi ׀ Keese and LippSmith was voluntarily dismissed by the Plaintiff on November 18, 2011.

The defendants removed the action to the District Court of Guam, on the basis of diversity jurisdiction, alleging that the admittedly Guam-based Grant Thornton and Roger Slater were "sham defendants" who were only joined to defeat complete diversity. The Plaintiff moved to remand the case to the Superior Court of Guam. In adjudicating the motion to remand, the District Court ruled that it was not clearly established in Guam law that the Plaintiff had not stated a claim against Grant Thornton and Roger Slater, and on that basis granted the motion to remand.

In two separate motions, though represented by the same counsel, on January 13, 2010 both the J.L.H. Trust and Keith A. Waibel, and also Grant Thornton and Roger Slater, moved to dismiss the complaint. The Plaintiff opposes both of these motions. The litigation was on hold due to the parallel litigation in federal court in the CNMI. On September 8, 2014, the Court heard oral argument on the motions to dismiss.

## DISCUSSION

**I. Personal Jurisdiction**

Defendants Waibel and J.L.H. Trust argue that Waibel is a California resident over whom Guam does not have personal jurisdiction with regard to the Plaintiff's claims for contribution and equitable indemnity. Defs. Waibel and the J.L.H. Trust's Mot. 17-18, Jan. 13, 2010. The Defendants do not argue that the Court may not exercise jurisdiction over Waibel

with regard to the intentional interference with contract, aiding and abetting, or breach of contract claims, however. See id. The Plaintiff responds by arguing that Waibel has substantial contacts with Guam as the trustee of the J.L.H. Trust, such that this Court's assertion of either general or specific personal jurisdiction would be appropriate. Pl.'s Opp. 16-17, Jun. 6, 2014.

Guam's long-arm statute authorizes the Superior Court of Guam to exercise personal jurisdiction "on any basis not inconsistent with the Organic Act or the Constitution of the United States." 7 GCA § 14109 (2005). Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, courts may only exercise personal jurisdiction over the defendant if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" PCI Commc'ns Inc. v. GST Pacwest Telecom Haw., Inc., 1999 Guam 17 ¶ 17 (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Because Guam's long-arm statute reaches as far as the federal Constitution allows, "[A] court analyzing personal jurisdiction under Guam's long-arm statute, simultaneously analyzes the issue of constitutional due process." Banes v. Superior Court, 2012 Guam 11 ¶ 17.

The Superior Court of Guam may assert general jurisdiction "where a defendant's activities in a state are either 'substantial,' or 'continuous and systematic.'" PCI Commc'ns Inc. v. GST Pacwest Telecom Haw., Inc., 1999 Guam 17 ¶ 18 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Mariano v. Surla, 2010 Guam 2 ¶ 23-24. Since International Shoe was decided in 1945, the federal Supreme Court has analyzed general personal jurisdiction over out-of-state defendants in four cases: Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

408 (1986); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. __; 131 S.Ct. 2846 (2011); and Daimler AG v. Bauman, 134 S.Ct. 746 (2014).

In Perkins, the plaintiff sued Benguet Consolidated Mining Company, a Philippine Islands corporation, in Ohio. Perkins, 342 U.S. at 438-39. During the Japanese occupation of the Philippine Islands in the Second World War, the president of the corporation, who was also its general manager and primary stockholder, relocated to Ohio, where he maintained an office and conducted affairs on the corporation's behalf, including keeping files, carrying on correspondence, distributing salary checks from corporate bank accounts, and holding director's meetings. Id. at 447-48. The U.S. Supreme Court ruled that an exercise of jurisdiction over the corporation by an Ohio trial court would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because it was in Ohio that the corporate president carried on "a continuous and systematic supervision of the necessarily limited wartime activities of the company." Id. at 448.

In Helicopteros, the plaintiffs filed suit in Texas state court against a Colombian corporation, Helicol, for the wrongful death of their decedents, who had perished in Peru while aboard a helicopter owned by Helicol. Helicopteros, 466 U.S. at 409-410. Helicol's chief executive officer had flown to Texas as part of the contract negotiations to provide the helicopter transportation services at issue. Id. at 410. Further contacts with Texas included the receipt of payments drawn upon an account at a Texas bank, purchase of helicopters, parts, and accessories from Bell Helicopter Company in Fort Worth, Texas, sending pilots to Texas for training, and sending management and maintenance personnel to Texas for factory visits and technical consultations. Id. at 411. The federal Supreme Court ruled that Helicol's contacts with

Texas did not rise to a continuous and systematic level, and thus Texas could not assert general personal jurisdiction over Helicol. Id. at 416.

In Goodyear, the relevant defendants were three European subsidiaries of Goodyear USA. Goodyear, 131 S.Ct. at 2850. The plaintiffs sued in North Carolina state court for wrongful death resulting from a bus crash in France allegedly caused by faulty tires manufactured by the defendants. Id. The defendants acknowledged North Carolina's jurisdiction over the parent company Goodyear USA, but contested jurisdiction over the European subsidiaries. Id. The U.S. Supreme Court interpreted the "continuous and systematic" requirement for general jurisdiction set forth in International Shoe as requiring the defendants to be "essentially at home in the forum State." Id. at 2851 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). When such jurisdiction is exercised over an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear, 131 S.Ct. at 2853.

The defendants, which primarily manufactured tires for European and Asian markets, did have some contacts with North Carolina. A small percentage of their tires, typically custom made for specialized vehicles, were distributed within North Carolina by other Goodyear USA affiliates. Id. at 2852. But they had no place of business, employees, or bank accounts in North Carolina, did not design, manufacture, or advertise in North Carolina, and did not themselves solicit business in North Carolina or ship tires to North Carolina customers. Id. The U.S. Supreme Court ruled that North Carolina courts could not exercise general personal jurisdiction, as the contacts fell far short of the required "continuous and systematic general business contacts," that would be necessary to subject the defendant to suits unconnected to the forum state. Id. at 2857 (quoting Helicopteros, 466 U.S. at 416).

Lastly, in <u>Daimler AG</u>, the defendant was a German corporation sued under the Alien Tort Statute and Torture Victims Protection Act in federal court in California, on allegations that its predecessor in interest's Argentine subsidiary had collaborated with Argentine security forces in committing human rights violations against the plaintiffs or their relatives. <u>Daimler AG</u>, 134 S.Ct. at 750-51. The purported general jurisdiction over the parent company was based on the contacts of its American subsidiary to California. <u>Id.</u> at 751. The Supreme Court ruled that the Northern District of California may not exercise general jurisdiction over Daimler AG, as neither it nor its American subsidiary was incorporated in California nor had its principal place of business there, and said that to rule otherwise would be to subject the defendant to general jurisdiction in every state in which the subsidiary's sales were sizeable. <u>Id.</u> at 761.

In contrast to general jurisdiction, specific jurisdiction is proper "where the defendant's contacts with the forum, though limited, are sufficiently related to the cause of action." <u>PCI Commc'ns, Inc. v. GST Pacwest Telecom Haw., Inc.</u>, 1999 Guam 17 ¶ 18 (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). In determining whether this is the case, the Guam Supreme Court applies a three-part test, to wit:

> 1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws.
> 2. The claim must be one which arises out of or results from the defendant's forum-related activities.
> 3. Exercise of jurisdiction must be reasonable.

<u>Mariano v. Surla</u>, 2010 Guam 2 ¶ 25; <u>PCI Commc'ns, Inc. v. GST Pacwest Telecom Haw., Inc.</u>, 1999 Guam 17 ¶ 23 (citing <u>Data Disc Inc. v. Sys. Tech. Assocs., Inc.</u>, 557 F.2d 1280, 1287 (9th Cir. 1977)). The Court shall address the second and third parts of the test.

In PCI Commc'ns Inc., the claim of an alleged breach of a contract to provide telecommunications services arose out of the defendant's mailing of an agreement to Guam, which was signed by the Guam corporation PCI in Guam, and payments being mailed to the defendant from Guam by PCI, so the claim arose out of the defendant's contacts with Guam and the second prong of the test was met. See PCI Commc'ns Inc., 1999 Guam 17 ¶ 30. In Mariano v. Surla, Mariano's claim for fraud and conversion of funds that Mariano deposited in Surla's bank account arose from Surla's forum-related activity of opening an account at a Guam bank, likewise meeting that the second prong of the test. Mariano v. Surla, 2010 Guam 2 ¶ 27.

The connection between the defendant and the forum jurisdiction that is required for a finding of minimum contacts must come about by an action of the defendant directed toward the forum. Asahi Metal Industry Co., Ltd. v. Super. Ct. of California, Solano Cnty., 480 U.S. 102, 112 (1987). Where a plaintiff raises separate causes of action, the court must have personal jurisdiction over the defendant with respect to each separate cause of action to adjudicate that cause of action. Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004); Data Disc. Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977). Even where the defendant does have minimum contacts with the jurisdiction and the claim arises from the contacts, the exercise of jurisdiction must still be reasonable, requiring a multi-factor determination including: 1) the extent of the defendant's interjection into the forum state; 2) the burden on the defendant; 3) the forum State's interest in adjudicating the dispute; 4) the plaintiff's interest in obtaining convenient and effective relief; 5) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 6) the shared interest of the several states in furthering fundamental substantive social policies. PCI Commc'ns, Inc., 1999 Guam 17 at ¶ 32 (citing Burger King Corp. v. Rudzeqicz, 471 U.S. 462, 476 (1985)).

The Plaintiff argues that this Court's personal jurisdiction over Keith A. Waibel is proper, on the basis of both general and specific jurisdiction. Pl.'s Opp. 15-17, Jun. 6, 2014. The Plaintiff points out that the Global Settlement Agreement specified that the Superior Court of Guam would retain jurisdiction over Junior's guardian and the J.L.H. Trust, that Waibel has sought and received the Superior Court of Guam's approval of many of his actions relating to the J.L.H. Trust and his role as trustee, has conducting trust business with persons in Guam, and has personally derived income and benefits from his management of the J.L.H. Trust. Id. at 16-17. The Plaintiff cites Mariano v. Surla for the proposition that general jurisdiction is proper if forum activities are substantial, even if they are not continuous and systematic, and that because correspondence is increasingly conducted electronically, accountability should not be made to turn upon physical presence. See id. at 16-17 (citing Mariano v. Silva, 2010 Guam 2 ¶¶ 24, 29).

The Plaintiff mistakes the meaning of Mariano v. Silva. The distinction between 'substantial' and 'continuous and systematic' activities is derived from International Shoe, a 1945 case, which used the word 'substantial' in the context of the phrase "continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co. v. Washington, 326 U.S. 310, 318 (1945). Since 1945, most recently in Goodyear in 2010 and AG Daimler in 2014, the federal Supreme Court has clarified the requirements for asserting general personal jurisdiction.

While the Supreme Court has primarily analyzed general personal jurisdiction over corporations, as to individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. __; 131 S.Ct. 2846 (2011). The defendant's activities in the forum much reach a level to make the

defendant "essentially at home in the forum State." Goodyear, 131 S.Ct. at 2851. The Guam Supreme Court's discussion of email communications in Mariano v. Silva was made with regard to specific personal jurisdiction, and was only after it had determined that the Superior Court lacked general personal jurisdiction over the defendant. See Mariano v. Silva, 2010 Guam 2 ¶¶ 24, 29. Regarding general jurisdiction, the Supreme Court ruled that "the only activity Surla conducted was maintaining the bank account which is insufficient to confer general jurisdiction." Id. at ¶ 24.

On these facts, there is no basis for the Court to exercise general jurisdiction over Waibel for any and all claims against him, including those that have nothing to do with his contacts to Guam or his role as the trustee of the J.L.H. Trust. The Plaintiff acknowledges that Waibel is a resident of California, not of Guam. Pl.'s Compl. 1, May 11, 2009. In contrast with Perkins, where the corporate headquarters was de facto moved from the Philippine Islands to Ohio during the Japanese occupation, Waibel has conducted his Guam-related business regarding the J.L.H. Trust by correspondence from California. See Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 447-48 (1952). Instead, an assertion of general personal jurisdiction requires the defendant to be "essentially at home," in the forum jurisdiction, and "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. __; 131 S.Ct. 2846, 2851, 2853 (2011). Waibel's domicile and home jurisdiction is California, not Guam, and although he has done business in Guam, his contacts do not arise to the high level to make an assertion of general jurisdiction appropriate.

Specific jurisdiction is a more difficult question. Defendant Waibel has certainly purposefully availed himself of the privilege of conducting activities in Guam. This includes

executing the Global Settlement Agreement, seeking and receiving the Superior Court of Guam's approval of many actions relating to the J.L.H. Trust and his role as trustee, conducting trust business with persons in Guam, and personally deriving income and benefits from his management of the J.L.H. Trust. Pl.'s Opp. 16-17, Jun. 6, 2014.

However, the personal jurisdiction analysis must apply to every claim, not just any one included in a particular complaint. See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004); Data Disc Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977). Defendant Waibel does not contest that the claims for intentional interference with contract, aiding and abetting, and breach of contract arise out of his contacts with Guam as the trustee of the J.L.H. Trust. See Defs. J.L.H. Trust and Waibel's Mot. 17-18, Jan. 13, 2010. But Waibel does argue that the contribution and equitable indemnity claims do not arise out of Waibel's contacts with Guam, but instead arise out of Junior Hillbroom suit against both Waibel and the Plaintiff David Lujan. See id. Junior's lawsuit, first brought in federal court in California and now pending in federal court in the CNMI, is the intervening link between Waibel's actions availing himself of the privilege of conducting activities in Guam and the Plaintiff's action in bringing the case at bar, an intervening link that Waibel had no control over. The connection between the contacts to the forum and the claims are much more attenuated than was the case in PCI Commc'ns Inc. or Mariano v. Surla, which respectively involved an allegation of the breach of a contract that was executed in Guam, and an allegation of the fraud or conversion of monies deposited into a Guam bank account.

Moreover, applying the test for whether the exercise of jurisdiction would be reasonable leads the Court to conclude that it would not be. The factors of that test are as follows: 1) the extent of the defendant's interjection into the forum state; 2) the burden on the defendant; 3) the

forum State's interest in adjudicating the dispute; 4) the plaintiff's interest in obtaining convenient and effective relief; 5) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 6) the shared interest of the several states in furthering fundamental substantive social policies. PCI Commc'ns, Inc., 1999 Guam 17 at ¶ 32 (citing Burger King Corp. v. Rudzeqicz, 471 U.S. 462, 476 (1985)).

Addressing the factors one by one, first, Waibel has indeed interjected himself into the forum to conduct the business of the J.L.H. Trust. But with regard to contribution or indemnity to the Plaintiff for any of the Plaintiff's liability to Junior Hillbroom, Waibel did not interject himself, but was interjected by Junior's lawsuit. Second, the defendant is burdened by having to defend a lawsuit in Guam, halfway around the world from his domicile of California, but Guam's personal jurisdiction over him with regard to three claims is unquestioned, and a defense of those claims would be necessary regardless of the additional two. Third, Guam has an interest in the performance of trust obligations by the trustee of the J.L.H. Trust, over which Guam's courts retain jurisdiction. But Guam's interest in the allocation of any potential liability to Junior of allegedly wrongful conduct is lower than its interest in the primary conduct itself. See Asahi Metal Industry Co., Ltd. v. Super. Ct. of California, Solano Cnty., 480 U.S. 102, 1114-15 (1987) (finding that California had a lesser interest in indemnification of liability for a product liability action than it did for the product liability itself). Fourth, the Plaintiff has an interest in litigating in his home jurisdiction of Guam. But such interest is lesser than normal because of the nature of the claims: contribution and indemnification for alleged liabilities that are still pending in other litigation. Because it is uncertain that there will be any liability to contribute or indemnify, the Plaintiff's level of interest in prosecuting his contribution and indemnification claims is likewise uncertain. Fifth, the interstate judicial system would operate

more efficiently if questions of contribution and indemnity were litigated as cross-claims in the CNMI litigation, which will also determine if there is any liability to contribute or indemnify, rather than if those questions were resolved separately in Guam. Sixth, neither Guam nor the CNMI has a very strong interest in the precise way any liabilities are allocated, as opposed to the substantive question of whether any breach of duty established by a fundamental social policy occurred. See Asahi, 480 U.S. at 1114-15. Evaluating the six factors together, the Court concludes that it would not be reasonable to exercise personal jurisdiction over Defendant Keith A. Waibel with regard to Plaintiff David Lujan's contribution and equitable indemnity claims.

Because the Court concludes that it lacks personal jurisdiction over Keith A. Waibel with regard to the Plaintiff's contribution and equitable indemnity claims, the Defendants' arguments that facts in support of those claims have been insufficiently pleaded and that those claims are not ripe are both moot and will not be addressed by the Court.

## II. Claims for Intentional Interference with Contract, Aiding and Abetting, and Breach of Contract

The Plaintiff argues that the District Court of Guam has already litigated two of the Plaintiff's claims, those of intentional interference with contract and aiding and abetting, with regard to the Guam-based defendants Grant Thornton and Roger Slater. Pl.'s Opp. 4-7, Jun. 6, 2014. Thus, the Plaintiff says that the Defendants may not relitigate these issues before this Court on a motion to dismiss, due to the doctrines of law of the case and claim and issue preclusion. Id. at 6-7. Instead of making the motion to dismiss before this Court, the Plaintiff says that the Defendants ought to have appealed the District Court's remand order. Id. at 5-6. He also argues that the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) set forth by the federal Supreme Court in Bell Atlantic v. Twombly and Ashcroft v. Iqbal has

not been adopted by the Guam Supreme Court in interpreting the Guam Rules of Civil Procedure, but that even if the Twombly and Iqbal standards were the law, the Plaintiff has stated viable causes of action under them. Id. at 7-15.

The Defendants respond that a remand order issued by a federal district court on the basis of a lack of subject-matter jurisdiction is not appealable, under 28 U.S.C. § 1447(d) and judicial interpretations thereof. Defs.' Reply 2-3, Jun. 13, 2014. The go on to argue that issue preclusion and law of the case are inapplicable, because the District Court decided a different legal question than the question before this Court. Id. at 3-6. The Defendants argue that the Guam Supreme Court has adopted the Twombly and Iqbal standard. Id. at 7-9. They also argue that the Plaintiff has not and cannot state claims for intentional interference with contract, aiding and abetting a breach of duty, and breach of contract as applied to Defendant J.L.H. Trust. Defs. Slater and Grant Thornton's Mot. 6-19, Jan. 13, 2010; Defs. J.L.H. Trust and Waibel's Mot. 5-20, Jan. 13, 2010. The Court first addresses the intentional interference with contract and aiding and abetting claims against Grant Thornton and Roger Slater.

**A. The Remand Order: Preclusion and Appealability**

The Supreme Court of Guam distinguishes claim and issue preclusion accordingly:

> 'Res Judicata' can refer generally to both 'claim preclusion' and 'issue preclusion.' However, the United States Supreme Court has sometimes used the term 'res judicata' in a narrower sense to refer only to 'claim preclusion.' Thus, '[i]n order to avoid confusion resulting from the two uses of "res judicata," we will use the terms 'claim preclusion' and 'issue preclusion' instead.' This approach has also been adopted by the Ninth Circuit.

Zahnen v. Limtiaco, 2008 Guam 5 ¶ 10, n.4 (internal citations omitted).

This Court will also distinguish between "issue preclusion" and "claim preclusion" as explained by the Guam Supreme Court.

"Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action." Perez v. FirstNet Ins. Co., 2009 Guam 17 ¶ 20 (citations omitted). "To successfully invoke claim preclusion...one must show that the following elements are present: '(1) a final judgment on the merits in an earlier suit, (2) an identity of causes of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.'" Zahnen, 2008 Guam 5 at ¶ 10 (citations omitted).

Issue preclusion, also called collateral estoppel, applies when the same parties relitigate an issue already decided in prior litigation between them, and that issue was essential to the judgment. See Zahnen v. Limtiaco, 2008 Guam 5 ¶ 10 n.5 (citing Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535–38 (5th Cir. 1978)).

Law of the case generally prevents a court from reconsidering an issue that it, or a higher court in the identical case, has already decided. See People v. Hualde, 1999 Guam 3 ¶ 13. All three doctrines, claim preclusion, issue preclusion, and law of the case require a repetition of litigation of something that has been already litigated and decided. Therefore, if the matter for this Court's decision was not previously before the District Court, then the District Court's ruling has no preclusive effect.

The Court may take judicial notice of a public record when adjudicating a motion to dismiss. Taitano v. Calvo Fin. Corp., 2008 Guam 12 ¶ 2. The relevant public record is the District Court of Guam's Opinion and Order of December 29, 2009. Lujan v. Girardi ı Keese, Civil Case No. 09-00017, 2009 WL 5216906, Opinion and Order (D. Guam Dec. 29, 2009).

The District Court noted that the Plaintiff had moved to remand the case back to the Superior Court on the basis that the District Court lacked diversity jurisdiction. Lujan v. Girardi

ı Keese at * 6. The Defendants admitted that non-diverse defendants Grant Thornton and Roger Slater were joined on the face of the complaint, but argued that the District Court should disregard this because they were fraudulently joined "sham defendants." Id. at * 7. The District Court described the applicable standard for determining whether a defendant was fraudulently joined thus:

> [T]he courts must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. If there is any possibility that a claim can be stated against the allegedly sham defendant, then remand is required. Stated another way, the defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the allegedly sham defendant. Obviously, this standard is more lenient that the standard for motions to dismiss…The Ninth Circuit has made clear that joinder is not fraudulent if the plaintiff has stated a colorable claim against the non-diverse defendant.

Id. at * 8 (internal quotations and citations omitted). Following the practice of other federal district courts within the Ninth Circuit, the District Court concluded that the standard to be applied in a motion to remand for fraudulent joinder "is something akin to a 12(b)(6) type analysis but not as stringent." Id. at * 10. Adjudicating the motion, the District Court adopted and affirmed the Magistrate Judge's Report and Recommendation, which had concluded that the Guam defendants were not fraudulently joined, and the District Court granted the Plaintiff's motion to remand. Id. at * 18-19, 25-26.

The District Court therefore made clear that in adjudicating the motion to remand it had not performed the same analysis as it would when faced with a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, which would require application of the standard articulated in Bell Atlantic v. Twombly and Ashcroft v. Iqbal. Instead, the District Court had used a standard that was more lenient to the Plaintiff seeking remand to this Court. In order to determine whether, in adjudicating the motion to remand, the District Court has already

determined an issue that is now before this Court, the Court must clarify the applicable standard for a motion to dismiss under Guam Rule of Civil Procedure 12(b)(6).

In Core Tech Int'l Corp. v. Hanil Eng'g & Constr. Co., 2010 Guam 13, the Guam Supreme Court adjudicated the appeal of a grant of a Rule 12(b)(6) motion to dismiss. Core Tech Int'l Corp. v. Hanil Eng'g & Constr. Co., 2010 Guam 13 ¶ 51. It quoted Twombly for the proposition that "a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Core Tech at ¶ 52 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 44, 555 (2007)). The plaintiff must "set forth factual allegations that 'raise a right to relief above the speculative level.'" Core Tech at ¶ 53 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 44, 555 (2007). Although the Guam Supreme Court did not explicitly say that it was adopting the federal courts' standard from Twombly and Iqbal, the Supreme Court's citation and use of the Twombly standard indicated that it is the law in Guam.

Therefore, the correct standard in Guam for adjudicating a Guam Rule of Civil Procedure 12(b)(6) motion to dismiss is the Twombly standard, and the District Court of Guam, when adjudicating the motion to remand, did not use that standard, but instead used a more lenient one. Accordingly, the issue before this Court has not been previously addressed. As stated above, claim preclusion, issue preclusion, and law of the case all require that either the same claim or same issue have already been litigated and decided. See Zahnen v. Limtiaco, 2008 Guam 5 at ¶ 10; see Zahnen at ¶ 10 n.5 (citing Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535–38 (5th Cir.1978)); see People v. Hualde, 1999 Guam 3 ¶ 13. Therefore, the Court is not precluded from considering Defendants Grant Thornton and Roger Slater's motion to dismiss.

Nor were the Defendants obliged to appeal the remand order before moving to dismiss in this Court. 28 U.S.C. § 1447(d) provides that an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except pursuant to sections 1442 (allowing removal by federal officers or agencies) and 1443 (allowing removal by members of the armed forces). 28 U.S.C. § 1447(d) (2011). Although subsection 1447(d) appears to be a straightforward prohibition on appealing remand orders, the U.S. Supreme Court has interpreted the statute as a whole, construing section 1447(c), which requires remand prior to final judgment in cases where the district court lacks subject matter jurisdiction, to limit the prohibition on appealing remand orders to those that are based on a lack of subject matter jurisdiction. See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127 (1995); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 711-12 (1996). Therefore, if a district court remands a case to state court, or in this case territorial court, for any reason other than a lack of subject matter jurisdiction, that remand order is appealable under 28 U.S.C. § 1291. See Harmston v. City and County of San Francisco, 627 F.3d 1273, 1277 (9th Cir. 2010); see 28 U.S.C. § 1291 (2011) (permitting the courts of appeals to exercise jurisdiction over appeals of final decisions of the district courts).

However, lack of subject matter-jurisdiction was the precise reason for the District Court of Guam's remand order in this case. The District Court determined that the Guam-based defendants Grant Thornton and Roger Slater were not fraudulently joined. Lujan v. Girardi ǀ Keese, Civil Case No. 09-00017, 2009 WL 5216906 at * 18-19, Opinion and Order (D. Guam Dec. 29, 2009). Therefore, a lack of complete diversity meant that the District Court could not exercise its diversity jurisdiction, and the District Court granted the motion to remand accordingly. Lujan v. Girardi ǀ Keese at * 25-26. The Defendants are not obligated to fruitlessly

attempt to appeal the District Court of Guam's remand order when the Ninth Circuit had no jurisdiction to hear the appeal.

## B. Breach of Contract and Intentional Interference with Contract

The Plaintiff's complaint alleges that Keith A. Waibel, Grant Thornton, and Roger Slater were not parties to the retainer agreements with the Plaintiff, that the J.L.H. Trust was the Plaintiff's counterparty instead, and that Waibel, Grant Thornton, and Roger Slater intentionally induced the Trust to breach those retainers. Pl.'s Compl. 12, May 11, 2009. The Plaintiff pleads for general, special, and punitive damages. Id. at 15.

The Defendants move to dismiss, arguing that they cannot be liable for the tort of intentional interference with contract. Waibel argues that as the trustee it is legally impossible for him to tortuously interfere with the contracts, because under Guam law a trust is an equitable relationship between trustee and beneficiary, rather than either a distinct legal person like a corporation, and also unlike an agency relationship where the actions of an agent may bind a principal. Defs. Waibel and J.L.H. Trust's Mot. 10-11, Jan. 13, 2010. Grant Thornton and Roger Slater repeat Waibel's arguments, and also argue that only a stranger to a contract can tortiously interfere with it, and they were not strangers to the contract, but rather were the agents of the trustee Waibel. Def.'s Grant Thornton and Roger Slater's Mot. 10-11, Jan. 13, 2010.

Defendants Keith A. Waibel and the J.L.H. Trust also move to dismiss the breach of contract claim against the J.L.H. Trust. Defs. Waibel and J.L.H. Trust's Mot. 19-20, Jan. 13, 2010. Similar to the argument that it is impossible for a trustee to interfere with a trust contracts, the Defendants argue that the J.L.H. Trust is not an entity that may sue or be sued in its own name. Id. at 20. Instead, any breach of contract claim may only be brought against Waibel the trustee. Id.

Opposing the motions, the Plaintiff argues that the modern law of trust tacitly recognizes a trust as a legal entity distinct from the trustee. Def.'s Opp. 14-15, Jun. 6, 2014. Recovery may come from trust assets as well as the trustee's personal assets, and the question of ultimate liability between the trust estate and the trustee may be determined separately, without the plaintiff's participation. Id. at 15. Similarly, the Plaintiff argues that it is possible for Waibel, in his personal capacity, to induce the trust to breach the retainer agreement, and for Slater and Grant Thornton to likewise be strangers to the contract because they served Waibel in personal capacity, not in trustee capacity. Id. at 12. The Plaintiff argues that the capacity in which Waibel acted is a factual question that cannot be disposed by a motion to dismiss. See id.

Both these claims implicate the doctrinal question of what exactly a trust is and is not. Guam's trusts statute, codified at 18 GCA Div. 2, Part 8, Ch. 65-66, §§ 65101- 66603, was enacted in 1953 and is derived from a former version of the California Civil Code, §§ 2215-89. See 18 GCA §§ 65101-66603 (2005); see Cal. Civ. Code §§ 2215-89 (repealed 1986).[1] Defendants Waibel and the J.L.H. Trust marshal California case law to argue that a trust may not be sued independently from a suit against the trustee. "[A]n ordinary express trust is not an entity separate from its trustee." Defs. Waibel and J.L.H. Trust's Mot. 19-20, Jan. 13, 2010 (quoting Moeller v. Superior Court, 947 P.2d 279, 283 n.3 (Cal. 1997)). This is in contrast with a corporation, which is a legal person separate from its shareholders, directors, and officers. Id. at 20 (citing Ziegler v. Nickel, 64 Cal.App.4th 545, 548 (Cal. Ct. App. 1998)). Any litigation regarding trust assets must be brought against the trustee rather than the trust itself. Id. at 20 (citing Moeller, 947 P.2d at 283, n.3).

---

[1] The California Law Revision Commission Comments to repealed section 2215 clarify that sections of the former California Civil Code dealing with trusts were removed because of inconsistency with court decisions, and that the common law rules governing trusts are the law of California except to the extent of statutory modification. See also Cal. Prob. Code § 15002 (1986). California's law of trusts was amended and recodified in the California Probate Code. See Cal. Prob. Code §§ 15000-19403 (1986).

In response, the Plaintiff cites the Third Restatement of Trusts thus: "Modern common-law and statutory concepts...tacitly recognize a trust as a legal entity consisting of a trust estate and the associated fiduciary relation between the trustee and the beneficiaries...especially distinguishing between the trustee personally or as an individual and the trustee in a fiduciary or representative capacity." Pl.'s Opp. 14, Jun. 6, 2014 (quoting Restatement (Third) of Trusts § 2 cmt a. (2003)). As trusts may be regarded as independent entities, the Plaintiff likewise opposes dismissal of his breach of contract action against the J.L.H. Trust. Pl.'s Opp. 14, Jun. 6, 2014.

The texts of section 2 of the Second and Third Restatements are quite similar, both expressing the traditional view of a trust as a "fiduciary relationship with respect to property." Restatement (Second) of Trusts § 2 (1959); Restatement (Third) of Trusts § 2 (2003). The Second Restatement describes trustee duty as: "subjecting the person by whom title to the property is held to equitable duties to deal the property for the benefit of another person," while the Third Restatement similarly reads: "subjecting the person who holds title to the property to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee." Restatement (Second) of Trusts § 2 (1959); Restatement (Third) of Trusts § 2 (2003).

However, the Plaintiff is correct to note the distinction in the official comment to the Third Restatement. The Reporter's notes to comment a. of section 2 lists reforms in the treatment of trusts, as entities as well as relationships, by certain American jurisdictions and in certain model statutes. Restatement (Third) of Trusts § 2 cmt a., reporter's notes (2003). Illustrative of newer thinking is Tatarian v. Commercial Ins. Co., the Uniform Partnership Act, and the Uniform Prudent Investor Act. See Tatarian v. Commercial Union Ins. Co., 672 N.E.2d 997, 1000 (Mass. App. Ct. 1996) (treating a trust as an entity that may be insured); see Unif.

P'ship Act § 601(8) (treating trusts as entities capable of being partners of partnerships); see Unif. Prudent Inv. Act § 9(b) (treating a trust as an entity to whom an agent may owe a duty).

Citing a number of Guam Superior Court cases, the Plaintiff states the elements of a the tort of intentional interference with contract thus: "(1) a valid contract between plaintiff and a third party; (2) the defendant had knowledge of the contractual relationship; (3) the defendant's intentional acts were designed to induce a breach of the contractual relationship; (4) there was an actual breach of the contractual relationship; and (5) damages result." Pl.'s Opp. 11, Jun. 6, 2011. The Plaintiff characterizes the contract as being between himself and the J.L.H. Trust, not between himself and the trustee Keith A. Waibel. See id. Instead, the Plaintiff says that the Defendants Waibel, Grant Thornton, and Slater acted to induce the J.L.H. Trust to breach the contract. See id. The Plaintiff argues that the motion to dismiss does not contest the sufficiency of the factual allegations, but only insists that it is legally impossible for the Plaintiff to state a claim. See id. at 11-12. But because Waibel is sued both in individual capacity and in trustee capacity, the Plaintiff writes that it is a question of fact whether Waibel the trustee was working on behalf of the beneficiary or on his own behalf. See id. at 12-13.

Defendant Waibel objects to the cause of action on grounds courts have consistently objected to efforts to "split the personality" of a trustee. Defs. Waibel and J.L.H. Trust's Mot. 8-9, Jan. 13, 2010 (citing multiple cases). Moreover, any of Waibel's actions were within the scope of his role as the trustee, and thus performed in a representative, not individual capacity. Id. at 9-10. Because there is no such thing as a trust "entity" upon whose behalf a trustee acts, it is the trustee himself who contracts, and it is legally impossible for a trustee to interfere with his own contract. See id. at 10-11. Building on this argument, Grant Thornton and Roger Slater argue that only strangers to a contract can be liable in tort for interfering with the contract, and

because agents to a contracting party stand in the place of their principal they likewise cannot be liable for interference with contract. See Defs. Grant Thornton and Slater's Mot. 10-11, Jan. 13. 2010 (citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 513 (1994) and Shoemaker v. Myers, 52 Cal.3d 1, 24 (1990).

The key legal dispute between the parties is whether it is possible for Waibel, the trustee of the J.L.H. Trust, to nonetheless act in a capacity wherein he is a stranger to that trust. If this is not legally possible, then neither he nor his agents the accounting firm Grant Thornton and the accountant Roger Slater can be liable for intentional interference with contract, as neither would be strangers to the contract. See, e.g. Pac. Gas & Elec. Co. v. Bear Stearns & Co., 791 P.2d 587, 589 (Cal. 1990).

Defendant Waibel cites the trusts treatise Bogert's Law of Trusts and Trustees for the proposition that "courts do not recognize the trustee, 'as trustee', as a legal entity or person, separate and distinct from the trustee in his other capacities." Defs. Waibel and J.L.H. Trust's Mot. 9, Jan. 13, 2010 (citing G. Bogert & G. Bogert, Law of Trusts & Trustees §§ 731 (2009)). However, this was in a discussion of the traditional, common law approach to the personal liability of a trustee for torts. See G. Bogert & G. Bogert, Law of Trusts & Trustees §§ 731 (2009). The authors continue to say that the modern trend is against the traditional approach, and that:

> The majority of United States jurisdictions have now enacted provisions of the Uniform Probate Code and the Uniform Trust Code or similar statutes that substantially limit the personal tort liability of trustees. Under these statutes trustees can be held personally liable only for torts for which they are personally at fault. These statutes also provide tort victims with a right to assert tort claims against the assets of the trust by suing the trustees in their representative capacity.

Id.; see Unif. Prob. Code § 7-306 (providing that a trustee is not personally liable on contracts entered into in his fiduciary capacity if that fiduciary capacity is disclosed and that a trustee is

only liable for torts committed in the course of administering the trust estate if the trustee was personally responsible); see Unif. Trust Code § 1010 (similar). Indeed, the modern trend in trust law distinguishes the trustee in representative capacity with the trustee in personal capacity for the purpose of paying damages owed to tort plaintiffs, similar to what the Plaintiff would have this Court do with respect to tortious interference with contract. Id. at § 732.

But the key to determining the current state of Guam law is recognizing that Guam has not, to date, adopted either of these reform statutes or versions of them. As stated above, Guam's trusts statute is based on a former version of the California Civil Code. Guam's estates and probate statute, codified at Title 15 of the Guam Code, recodifies the Probate Code of Guam of 1970, which was based on the California Probate Code. See 15 GCA § 101 *et seq.* (2005); see Guam Probate Code § 20 *et seq.* (1970); see California Probate Code § 20 *et. seq.* (repealed 1986). The statutory provisions on trustee liability and its limits, sections 65210-12, only refer to trustee liability to the beneficiary. See 18 GCA §§ 65210-12 (2005). The modern trend toward limiting a trustee's personal liability to third parties, with a clear split in the personality of the trustee into representative capacity and personal capacity, is absent in Guam's statute. See 18 GCA §§ 65101-66603 (2005).

Similarly, Guam's trust statute has not departed from regarding a trust as a relationship rather than an entity. See 18 GCA § 65102 (2005) ("A voluntary trust is an obligation arising out of a personal confidence in, and voluntarily accepted by, one for the benefit of another."). Trustees are regarded as agents for the trust property with authority as conferred by the declaration of trust and by the trust statute, whose acts within the scope of authority bind the trust property to the same extent as the acts of an agent bind the agent's principal. 18 GCA § 66301 (2005). But the property itself, though it can be bound by the trustee, is not an entity

independent of the trustee the way a principal is independent of its agents or a corporation is legally independent of its shareholders and directors.

There may be policy reasons for treating a trust akin to a corporation, distinct from its shareholders and directors, or akin to a limited liability company, distinct from its members, able to sue and be sued in their own name. However, traditionally at common law, trusts have been regarded as relationships, not as entities. See Restatement (Second) of Trusts § 2 (1959). In the absence of a legislative or appellate case law instruction to the contrary, the Court is obliged to rule that the trustee, not the trust itself, is the real party in interest in litigation involving trust property, and the only party capable being sued by a third party. See Pillsbury v. Karmgard, 22 Cal.App.4th 743, 753 (1994). Likewise, there may be sound policy reasons for splitting the personality of the trustee into representative and personal capacity, in line with the modern trend in trust law and contrary to the older common law approach, but as the Guam Legislature has not enacted a reform statute that adopts the modern trend, the Court concludes that it may not do so itself.

Because, under Guam law, a trust is not an entity with an independent legal personality, able to contract in its own name and sue or be sued on its own, the Plaintiff has not stated and cannot state a claim for breach of contract against the J.L.H. Trust. Of the two defendants sued for breach of contract, Waibel and the J.LH. Trust, only Waibel can be sued by name. Because, under Guam law, the personality of the trustee cannot be split into a representative capacity and a personal capacity, it is legally impossible for the trustee Keith A. Waibel to interfere with a trust contract. Additionally, since the only basis by which Grant Thornton and Roger Slater could be liable for intentional interference with contract is that they were hired by the trustee

Waibel, they are agents of the Plaintiff's contractual counterparty and it is legally impossible for them to interfere with the contract.

## C. Aiding and Abetting

The Plaintiff's complaint also alleges that Keith A. Waibel, Grant Thornton, and Roger Slater committed tortious acts in concert with the J.L.H. Trust or pursuant to a common design with the trust, amounting to a breach of duty owed to Lujan by each of them. Pl.'s Compl. 13, May 11, 2009. This cause of action is entitled "aiding and abetting." Id. The Plaintiff pleads for general, special, and punitive damages. Id. at 15.

As was the case for the intentional interference with contract action, the District Court of Guam heard argument on aiding and abetting in the course of adjudicating the Plaintiff's motion to remand. See Lujan v. Girardi ǀ Keese, Civil Case No. 09-00017, 2009 WL 5216906 * 15-18, Opinion and Order (D. Guam Dec. 29, 2009). In determining whether the Plaintiff has stated a claim against Grant Thornton and Roger Slater, the applicable standard was "something akin to a 12(b)(6) type analysis but not as stringent." Lujan v. Girardi ǀ Keese at * 10. The District Court found the Plaintiff had stated, though inelegantly, a claim for constructive trust that would give rise to the allegedly breached fiduciary duty, and that it was unsettled whether Guam recognized a tort of aiding and abetting a breach of contract. See id. at 17, 18. Therefore, Grant Thornton and Slater were not "sham defendants" with regard to the aiding and abetting claim. See id. at 18-19.

However, at oral argument, the Plaintiff's counsel clarified that the Plaintiff alleged a aiding and abetting of a breach of fiduciary duty, not aiding and abetting a breach of contract. The Plaintiff's counsel also clarified that the duty that the Plaintiff alleges the defendants aided

and abetted a breach of did not arise from a claim for constructive trust. The Court shall not address these arguments, as they were not made by the Plaintiff.

The Plaintiff argues that the elements of the tort of aiding and abetting a breach of fiduciary duty in Guam are as follows: "(1) the primary tortfeasor breaches a fiduciary duty which he owes the victim-plaintiff; (2) the aider-abettor defendant has actual knowledge of the breach; (3) the aider-abettor defendant lends the primary tortfeasor substantial assistance or encouragement in committing the breach; and (4) the victim-plaintiff suffers damages proximately caused by the breach." Pl.'s Opp. 13, Jun. 6, 2014 (citing, among other cases, TNN Guam, Inc. dba Hotel Nikko Guam v. Jale Mgmt. Info. Servs., Inc. dba Infor. & Data Sys., CV 0516-07 (Super. Ct. Guam Jun. 26, 2008 and Jul. 6, 2009) (Maraman)).

The Defendants moves to dismiss, arguing that the Plaintiff have failed to state a claim for aiding and abetting a breach of fiduciary duty, for multiple reasons. Defs. Waibel and the J.L.H. Trust's Mot. 13-16, Jan. 13, 2010. First, that the Supreme Court of Guam, as opposed several Superior Court judges, has not yet affirmatively recognized the tort of aiding and abetting a breach of fiduciary duty. Id. at 14. Second, that no jurisdiction has held that a claim for aiding and abetting a breach of fiduciary duty may arise from a constructive trust. Id. Third, that as the trust lawyer, David Lujan was only owed contractual, not fiduciary, duties by the trustee Waibel. Id. at 14-15. Defendants Keith A. Waibel and the J.L.H. Trust additionally argue that it is legally impossible for Waibel to aid and abet his own actions made as the trustee, in an argument substantially similar to those made against the claims that the J.L.H. breached a contract or that Waibel intentionally interfered with a contract. Id. at 15-16.

The Plaintiff's counsel clarified at oral argument that the source of the duty allegedly breached was not a claim for constructive trust. The Plaintiff says that it is inconsistent for the

Defendants to both note that "a trust is...fiduciary relationship with respect to property," and also argue that Waibel owed no fiduciary duty to the Plaintiff. Pl.'s Opp. 14, Jun. 6, 2014 (quoting Defs. Waibel and J.L.H. Trust's Mot. 20, Jan. 13. 2010). Instead, at oral argument the Plaintiff argued that the trustee does have a fiduciary duty to pay out all monies owed by the trust, and to honor some obligations but not others is a breach of that obligation, analogizing to a probate administrator's duty to pay all lawful debts to estate creditors as well as paying estate beneficiaries.

Without some applicable fiduciary duty owed by Waibel to the Plaintiff, the Plaintiff cannot make out a claim for aiding and abetting a breach of fiduciary duty. See TNN Guam, Inc. dba Hotel Nikko Guam v. Jale Mgmt. Info. Servs., Inc. dba Infor. & Data Sys., CV 0516-07 35 (Super. Ct. Guam Jun. 26, 2008) (Maraman); see also Restatement (Second) of Torts § 876 (1965) (requiring there to have been a breach of duty for aiding and abetting liability to attach). David Lujan was the attorney hired by the trustee Keith A. Waibel to represent the interests of the trust beneficiary Junior Hillbroom. When an attorney is hired on behalf of a trust, the trustee becomes the attorney's client. Moeller v. Superior Court, 947 P.2d 279, 320 (Cal. 1997). The attorney therefore owes his or her client, the trustee, a professional fiduciary duty. See, e.g., Bird, Marella, Boxer & Wolpert v. Superior Court, 106 Cal.App.4th 419, 430 (Cal.Ct.App. 2003). But while it is true by definition that a trustee owes a fiduciary duty to the beneficiary, it does not follow that the duties owed by the trustee to any contracted-with vendors, such as trust attorneys, are fiduciary in nature, rather than contractual.

The Court does not rule that it is legally impossible, in any and all factual circumstances, for a trustee to owe a fiduciary duty to a trust lawyer. However, as pleaded and argued, the Plaintiff has not identified any fiduciary duty owed to him by Waibel in this case, and thus has

so far failed to state a claim for aiding and abetting a breach of fiduciary duty against Waibel or Grant Thornton and Slater. Granting the motion on this basis, the Court does not need to address the Defendants' alternate arguments.

## CONCLUSION

For the reasons set forth above, the Court concludes that under the facts, at this time, it is unreasonable for it to exercise personal jurisdiction over Keith A. Waibel with regard to the Plaintiff David Lujan's claims for contribution and equitable indemnity. With regard to the claims for contribution and equitable indemnity, the Defendants' motion to dismiss is hereby GRANTED IN PART. The claims for contribution and equitable indemnity are DISMISSED WITHOUT PREJUDICE, but are not adjudicated on the merits, may be litigated in a more appropriate jurisdiction, and may be refiled in Guam if the circumstances, which currently make exercising personal jurisdiction over Keith A. Waibel with regard to these claims unreasonable, undergo material change.

The Court concludes that the Plaintiff has failed to state a claim for breach of contract against the J.L.H. Trust, and as amendment of the complaint would be futile regarding the breach of contract claim against the J.L.H. Trust, the Defendants' motion to dismiss is hereby GRANTED IN PART and the claim is DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND.

The Court concludes that the Plaintiff has failed to state a claim for intentional interference with contract against Keith A. Waibel, Grant Thornton, and Roger Slater, and as amendment of the complaint would be futile regarding the intentional interference with contract claim, the Defendants' motions to dismiss are hereby GRANTED IN PART and the claim is DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND.

The Court concludes that the Plaintiff has not stated a claim for aiding and abetting against Keith A. Waibel, Grant Thornton, and Roger Slater. However, the Court does not conclude that amendment of the complaint would be futile regarding the aiding and abetting claim. Therefore, the Defendants' motions to dismiss are hereby GRANTED IN PART and DENIED IN PART and the claim is DISMISSED WITH LEAVE TO AMEND.

In toto, the Plaintiff's complaint is DISMISSED. The dismissal is without leave to amend in part and with leave to amend in part, as set forth above. The Plaintiff shall have thirty (30) days from the date of this Decision and Order to file his amended complaint. If no amended complaint is received within thirty (30) days, the Court shall dismiss the case.

**IT IS SO ORDERED** this day of ___OCT 2 9 2014___.

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
*Maher & Thompson*
*Civille & Tang*
Date: 10/29/14 Time: _____
A. A. Santos
Deputy Clerk, Superior Court of Guam